**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICK GARWO, JR.<br>30 Quaker Oat Road<br>Levittown, PA 19057<br><br>Plaintiff,<br><br>v.<br><br>DELTA COMMUNITY SUPPORTS, INC.<br>720 Johnsville Blvd., Suite 700<br>Warminster, PA 18974<br><br>Defendant. | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Patrick Garwo, Jr. (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Delta Community Supports, Inc. (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under Title VII and Section 1981. There lies supplemental and/or

ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the *United States Supreme Court in International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Pennsylvania Human Relations Commission ("PHRC") ("EEOC") and also dual-filed said charge with the Equal Employment Opportunity Commission. Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC, and by waiting at least one year before asserting his PHRA claims.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Delta Community Supports, Inc. is a Pennsylvania corporation offering comprehensive support for adults with developmental disabilities, foster care, and adoption, located at the above-captioned address.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a Black (West African) male, from Liberia.

12. Plaintiff has been employed by Defendant for three (3) separate terms, beginning in or about February of 2009, until his unlawful termination (discussed further *infra*) on or about August 27, 2024.

13. For example, Plaintiff was employed by Defendant from February 2009 through March 2011, as a Residential Manager and a Program Coordinator; from in or about July of 2013 to in or about 2019, as a Project Director; and from in or about March of 2022 through in or about August 27, 2024, as an Associate Director.

14. At the time of his termination, Plaintiff was working from Defendant's facility located at 720 Johnsville Blvd., #7, Warminster, PA 18974.

15. Throughout his multiple terms of employment with Defendant, Plaintiff fell under the supervision of several members of management, including but not limited to: Executive Director, Nannette Wolf (Caucasian/American, hereinafter "Wolf"); Executive Director, Cate Carrol (Caucasian/American, hereinafter "Carrol"); Lauren (Caucasian/American, Last Name Unknown – hereinafter "Lauren"), Executive Director, Amanda Fischer (Caucasian/American, hereinafter "Fischer"), and at the time of Plaintiff's termination, Regional Director, Wendy Didomenico (Caucasian/American, hereinafter "Didomenico").

16. During his tenure with Defendant, Plaintiff was a reliable, dependable, hard-working employee who performed his job responsibilities well and without issues until Defendant came under predominantly new Caucasian management, specifically Didomenico, in or about 2022/2023.

17. Upon Plaintiff's observations and belief, Defendant's work environment has been disparate and unfairly harsh toward African employees.

18. Throughout the course of his employment with Defendant, and more intensely toward the latter part of his tenure with Defendant, it was clear that that Caucasian management favored Caucasian/American and or non-African employees, as Plaintiff and other African employees were subjected to disparate and discriminatory treatment by management because of their race and/or national origin. By way of example, but not intended to be an exhaustive list, unlike their Caucasian/American and/or non-African co-workers:

a. Plaintiff and other African employees were treated in a rude and demeaning way and regularly talked down to;

b. Regional Director, Jennifer Cator (Caucasian/American hereinafter "Cator") informed several employees that Didomenico "does not like Africans, and she will make sure that she gets rid of any Africans";

c. Plaintiff's ideas, recommendations, and suggestions were dismissed with frustration by Caucasian/American and/or non-African management, while the ideas, recommendations, and suggestions of Caucasian and/or non-African employees were considered and given credibility;

d. On at least one occasion Didomenico hostilely informed one of Plaintiff's African direct reports Residential Manager, Gwendolyn Flowers (hereinafter "Flowers") that "Africans are too arrogant and think they know it all," to which Flowers objected; and

e. African employees were issued pretextual discipline and or terminated for manufactured or minor issues, while Caucasian/American and/or non-African employees were given warnings or minor discipline for far worse infractions (*i.e.*, at least one African-American employee cursed at a Caucasian Director, was off

the schedule and a no-call no show for weeks, and then quit, but Defendant allowed him to return to work shortly thereafter).

19. Additionally, in or about August of 2024, Defendant began to target African employees based on their national origin, race, and/or ancestry, including but not limited to Plaintiff, Flowers, Residential Manger, Michael Sackie (hereinafter "Sackie"), and Program Specialist, Wyeatta Moore (hereinafter "Moore"), for using clients' funds to pay for parking when taking them to medical appointments in Philadelphia, PA.

20. Specifically, it was often difficult to find parking available when taking clients to medical appointments in Philadelphia. As a result, Plaintiff and other employees had been authorized to use client funds to initially pay for parking after which they would bring back the receipt and account for the funds.

21. Throughout Plaintiff's multiple tenures with Defendant, the aforementioned members of management (*see* Paragraph 9, *supra*) instructed Plaintiff to use client funds when needing to take clients to Philadelphia, PA for medical appointments, in order to pay for parking. Based on this directive Plaintiff was given, he instructed his subordinates to do the same.

22. It is Plaintiff's understanding and belief that Defendant's policy and practice has always been to use clients' funds to pay for parking when taking them to medical appointments in Philadelphia, PA.

23. Receipts for client funds used to pay for parking are attached to each client's financial records.

24. Defendant did not provide company funds to cover the cost of parking when taking clients to medical appointments in Philadelphia, PA, but employees were required to get clients to their appointment on time and without added stress.

25. On or about August 7, 2024, Plaintiff was suspended pending an investigation.

26. The only other information that Defendant provided at the time of Plaintiff's suspension was that there was a reported incident that required the initiation of an internal investigation.

27. During Defendant's alleged investigation, Plaintiff learned that the reported incident was regarding the use of clients' funds to pay for parking when taking the clients to medical appointments in Philadelphia, PA.

28. From August 7, 2024, through August 27, 2024, Defendant suspended Plaintiff without pay, claiming that using client's funds for parking for medical appointments amounted to "financial exploitation" of a client. Plaintiff was also suspended for allegedly failing to reasonably accommodate an employee's request for a transfer due to her religion.

29. However, during Plaintiff's unpaid suspension, Plaintiff provided Defendant with documentation to substantiate his assertions that he, and all other employees (including Caucasian/American employees and/or non-African employees) have always used clients' funds to pay for parking in Philadelphia, as instructed by both its Executive and Regional Directors; and, Plaintiff provided copies of text message conversations between Plaintiff and the employee requesting to be transferred to show that she never disclosed to Plaintiff that she was requesting the transfer as a religious accommodation.

30. Nonetheless, Plaintiff was abruptly terminated on or about August 27, 2024, for alleged "financial exploitation" of a client and purportedly failing to reasonably accommodate another employee's alleged request for a religious accommodation.

31. Defendant's purported reasons for Plaintiff's termination is completely false and pretextual as Caucasian/American and/or non-African employees used clients' funds to pay for client parking but were not disciplined and/or terminated for the same, and Plaintiff effectively

rebutted with written documentation the allegation that the employee never disclosed to him that she required a transfer as a religious accommodation.

32. Defendant has engaged in a clear, concerted, and documented pattern of placing African employees on unpaid administrative leaves for approximately one months' time with little to no communication and updates during said leaves and then terminating each of them for the same vague and/or baseless reasons such as "financial exploitation and unprofessional behavior."

33. For example, around the same time that Plaintiff was terminated in or about August of 2024, an African Resident Manager/Coordinator, Michael Sackie (hereinafter "Sackie") was placed on administrative leave and ultimately terminated for "financial exploitation and unprofessional behavior," which was completely untrue.[1]

34. Thereafter, just a few months following Plaintiff's termination, on or about November 11, 2024, Flowers was also placed on unpaid administrative leave without being provided any reason as to why and then terminated for "financial exploitation and unprofessional behavior," which was patently untrue, completely pretextual, and further evidence of Defendant's clear scheme to terminate African employees for no other reason but their race and/or national origin.[2]

35. Plaintiff believes and therefore avers that he was subjected to a hostile work environment, pretextual discipline (including but not limited to unpaid suspension), and ultimately terminated because of his race, ancestry, ethnicity, and/or national origin

[1] Sackie has similarly filed claims for race, ancestry, ethnicity, and national origin discrimination in the PHRC.

[2] Flowers has also filed claims for race, ancestry, ethnicity, and national origin discrimination in the Eastern District of Pennsylvania. *See* Flowers v. Delta Community Supports, Inc., Case No. 2:26-cv-02843-GAW (2026).

**COUNT I**
**Violations of 42 U.S.C. Section 1981**
**(Race, Ancestry, Ethnicity Discrimination and Hostile Work Environment)**

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. During Plaintiff's employment with Defendant, he was subjected to/observed discrimination and a hostile work environment through disparate treatment, pretextual discipline (including but not limited to unpaid suspension) and demeaning and/or derogatory treatment because of his race, ancestry, and ethnicity.

38. Plaintiff was ultimately terminated on or about August 27, 2024, for completely pretextual reasons.

39. Plaintiff believes and therefore avers that he was subjected to a hostile work environment, pretextual discipline (including suspension), and ultimately terminated because of his race, ancestry[3], and ethnicity[4].

---

[3] It is very well established that Section 1981 protects all individuals because of their (1) race; (2) ancestry; and (3) ethnic characteristics, and an individual's appearance and physical characteristics are completely irrelevant to a claim under the statute. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that intentional discrimination based solely on a person's ancestry or ethnic characteristics is racial discrimination that Congress intended Section 1981 to forbid)*; see also Vill. of Freeport v. Barrella,* 814 F.3d 594, 598 (2d Cir. 2016) (holding discrimination based on Hispanic ancestry or lack thereof constitutes racial discrimination under Section 1981)*; Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir. 1987)(reversing grant of summary judgment and holding that Puerto Ricans constitute a race as defined by Section 1981*);see also Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed. Appx. 656 (8th Cir. 2009) (finding European Slavic plaintiff states a cause of action under Section 1981 for harassment because of his ancestry and accent); *Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998) ("[t]he prohibition against racial discrimination [codified in Section 1981] encompasses discrimination based on ancestry or ethnic characteristics"); *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387, n.7 (10th Cir. 1991) (noting that the concept of race under § 1981 is broad, extending to matters of ancestry which are normally associated with nationality, not race in a biological sense); *Smith v. Specialty Pool Contractors*, 2008 WL 4410163, at *4 (W.D. Pa. 2008) ("Persons of Jewish ancestry are a distinct race and, therefore, within the protection of 42 U.S.C. § 1981" (citing *Al-Khazraji,* 481 U.S. at 611-13)); *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 374 (E.D.N.Y. 2000) (holding section 1981 applies to discrimination on the basis of Italian ancestry); *Ganthier v. North-Shore Long Island Jewish Health System, Inc.,* 345 F.Supp.2d 271, 281 (E.D.N.Y. 2004) (Spatt, J.) ("Under Section 1981, 'race' includes ancestry and ethnicity.").

[4] *See Al-Khazraji*, 481 U.S. at 613 (holding the matter of race must be considered broadly and noting the understanding of "race" in section 1981 includes groups "who might be deemed Caucasian today," such as Swedes, Norwegians, Germans, Greeks, Finns, Italians, Russians, Arabs, Spaniards, Hungarians, etc.); *Vodopwec v. Anthony's LLC*, 2018

40. These actions as aforesaid constitute unlawful discrimination and a hostile work environment under Section 1981.

**COUNT II**
**<u>Violations of Title VII of the Civil Rights Act of 1964 (“Title VII”)</u>**
**(Race and/or National Origin Discrimination and Hostile Work Environment)**

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. During Plaintiff’s employment with Defendant, he was subjected to/observed discrimination and a hostile work environment through disparate treatment, pretextual discipline (including but not limited to unpaid suspension) and demeaning and/or derogatory treatment because of his race, ancestry, ethnicity, and national origin.

43. Plaintiff was ultimately terminated on or about August 27, 2024, for completely pretextual reasons.

44. Plaintiff believes and therefore avers that he was subjected to discrimination and a hostile work environment because of his race and/or national origin.

45. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

**COUNT III**
**<u>Violations of the Pennsylvania Human Relations Act (“PHRA”)</u>**
**(Race and/or National Origin Discrimination and Hostile Work Environment)**

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

U.S. Dist. LEXIS 129446, *9-10 (D.N.J. 2018) (“Courts have interpreted “race” for purposes of section 1981 to include “ancestry or ethnic characteristics” (quoting *St. Francis College*, 481 U.S. at 613); *Quintana v. Byrd*, 669 F. Supp. 849 (N.D. Ill. 1987) (finding that plaintiff’s allegations of discrimination based on her ethnic characteristics, as opposed to her country of origin, was sufficient to state a cause of action under Section 1981).

47. Plaintiff reasserts and re-alleges each and every allegation and claim as set forth in counts one and two as such actions also constitute violations of the PHRA (as the PHRA contains the same protections as Title VII and Section 1981 and is interpreted identically under Third Circuit jurisprudence).

48. The aforesaid allegations constitute violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: August 26, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Patrick Garwo, Jr. | : | CIVIL ACTION |
| v. | : | |
| Delta Community Supports, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 8/26/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:______________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):______________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*______________ ______________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GARWO, JR., PATRICK

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

DELTA COMMUNITY SUPPORTS, INC.

County of Residence of First Listed Defendant: Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 8/26/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______